861 F.2d 145
 Craig M. WILEY, Individually and Administrator of Mary Sue
Wiley, Deceased, Plaintiff-Appellant, (87-5654),
Cross-Appellee,
v.
Roy W. MONTGOMERY, Defendant-Appellee, Cross-Appellant, (87-5687).
COMMUNITY UNITED METHODIST HOSPITAL, INC., Defendant and
Third Party, Plaintiff-Appellee, Cross-Appellant, (87-5688),
v.
Margaret SWANBERG and Ann Swanberg, Third Party Defendants-Appellees.
 Nos. 87-5654, 87-5687 and 87-5688.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 17, 1988.
Decided Nov. 14, 1988.
Rehearings and Rehearings En Banc Denied Dec. 22, 1988.
Rehearings and Rehearings En Banc Denied Dec. 22, 1988.
 
 J. Landon Overfield (argued), West, Gibbs, Overfield, Suggs, Henderson, Ky., Stanley C. Suggs, Charles B. West, Jr., for plaintiff-appellant, cross-appellee.
 Frank N. King, Jr. (argued), Dorsey, Sullivan, King, Gray, Norment, H. Randall Redding (argued), King, Deep and Branaman, Henderson, Ky., William M. Deep, for appellees.
 James D. Harris, Jr. (argued), Bowling Green, Ky., for Margaret Swanberg.
 Before KEITH and WELLFORD, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 
 
 1
 Plaintiff appeals from summary judgment in this diversity medical malpractice action. The defendants cross-appeal certain interlocutory orders.
 
 
 2
 This is a grisly record growing out of an automobile accident which occurred February 4, 1984. Plaintiff and his wife were involved in an accident caused by Ann Swanberg, a third-party defendant. The Swanberg vehicle collided with plaintiff's car from the rear causing it to go out of control and strike a utility pole. The pole fell on the plaintiff's car on the passenger side where plaintiff's wife was sitting at the time. The pole fell on Mrs. Wiley causing severe head injuries.
 
 
 3
 The paramedics who treated Mrs. Wiley at the scene described her condition as limp, unresponsive, unconscious and with labored breathing due to profuse bleeding through the mouth and nose. Her left pupil was dilated and fixed. Mrs. Wiley was diagnosed as a head trauma victim and transported to Community United Methodist Hospital. One of the defendants herein, Dr. Roy Montgomery, the emergency room physician on duty at the time, treated Mrs. Wiley. Dr. Montgomery, the paramedics and several witnesses from the hospital staff testified that Mrs. Wiley exhibited "decerebrate posturing," both at the scene of the accident and at the hospital. "Decerebrate posturing" represents an extension of one or both of the upper or lower extremities in response to pain. This is usually caused by a severe injury to the brain.
 
 
 4
 Mrs. Wiley also began to vomit, adding to the difficulty in breathing, Dr. Montgomery ordered a tube inserted to help her breathe. The vomiting continued and Dr. Montgomery ordered a nasogastric tube inserted to relieve the patient of any stomach contents. Mrs. Wiley was then transferred to a hospital in Evansville, Indiana, which was better equipped to handle severe head injuries and where a neurosurgeon was on staff.
 
 
 5
 The essence of this lawsuit relates to the insertion of the nasogastric tube by the staff at Community Hospital at the direction of Dr. Montgomery. A nasogastric tube is a flexible tube long enough to be inserted through the nose or mouth and extend into the patient's stomach. In this instance, the nurse inserted the tube through the left nostril, but instead of it passing into the stomach, it passed into Mrs. Wiley's brain due to the skull fracture in an area near the nasal passage. As a result, the tube pierced and coiled through Mrs. Wiley's brain. Mrs. Wiley was treated at the Evansville Hospital for one month and then transferred to a convalescent home where she died. She was unconscious from February 4, 1984 (the date of the accident) to the date of her death on December 15, 1984.
 
 
 6
 The plaintiff-administrator of Mrs. Wiley's estate filed suit, a medical malpractice action against Community Hospital and Dr. Montgomery, first as a personal injury claim and then as a wrongful death action. The defendants filed motions for summary judgment. The District Court in the Western District of Kentucky granted defendants' motions for summary judgment holding that the injuries sustained during the accident were the cause of Mrs. Wiley's death and that decedent therefore died from those injuries notwithstanding the treatment by defendants. It specifically held that there was no testimony that Mrs. Wiley had a chance of survival after her initial injuries.
 
 
 7
 There is, however testimony in this record to the effect that the possibility of Mrs. Wiley's survival could not be ruled out. The record contains testimony from Dr. Pedro Dominguez, M.D., neurosurgeon, who treated Mrs. Wiley at the Deaconess Hospital and who testified to the following:
 
 
 8
 Q. Let me ask you this. In your opinion with a reasonable degree of medical probability did the insertion of the nasogastric tube through Mrs. Wiley's brain cause injury to her brain?
 
 
 9
 A. I think it did.
 
 
 10
 Q. In your opinion with a reasonable degree of medical probability would the injuries that were caused by the nasogastric tube passing through her brain, in and of themselves have been sufficient to cause her comatose state and the ultimate development of whatever caused her death?
 
 
 11
 [Objection omitted.]
 
 
 12
 Q. You may go ahead and answer, Doctor.
 
 
 13
 A. I don't know how to answer it. Do I qualify it? Do I answer first your direct question or do I qualify afterwards?
 
 
 14
 Q. I would like for you to answer my question directly.
 
 
 15
 A. Yes, direct answer, answer to the direct question, yes.
 
 
 16
 Further, Dr. Lewis Travis, a neurologist, testifying by deposition, gave the following pertinent testimony as to the impact on the deceased of improper implantation of the nasogastric tube compared to the brain damage caused by the accident itself.
 
 
 17
 Q. I would ask the question again. Doctor, from your review of the records, the x-rays and the depositions, have you formed an opinion, with a reasonable degree of medical probability, as to the effect the insertion of the nasogastric tube into Mary Sue Wiley's brain had on her?
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 A. Well, the tube would have damaged the brain that it passed through, which was the mid brain, among other structures. You can't put a structure such as a rubber tube through a piece of brain without injuring it.
 
 
 21
 Q. Doctor, from your review of those records, in your opinion, with a reasonable degree of medical probability, would the injuries caused by the insertion of the nasogastric tube into her brain in and of themselves have been sufficient to cause her state of coma for approximately ten months and her ultimate death?
 
 
 22
 [objections omitted]
 
 
 23
 Q. Now, Doctor, if you remember my question you can answer it, or if you would like me to I will state it again.
 
 
 24
 A. No, I can answer it. The answer is yes, a tube put into a brain, into a normal brain, would have caused coma and probable death.
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 Q. Doctor, from your review of all of the records and the depositions, could you with a reasonable degree of medical probability rule out recovery or at least improvement in Mrs. Wiley after the automobile accident?
 
 
 28
 A. No, I couldn't rule out her recovery as the result of the automobile accident itself.
 
 
 29
 The evidence which we have just quoted appears to this court to make summary judgment inappropriate. This case is therefore remanded to the District Court for trial to a jury.
 
 WELLFORD, Circuit Judge, dissenting:
 
 30
 This is a very difficult medical malpractice diversity case involving the treatment received by a woman seriously injured in an automobile accident. After reviewing carefully the law of Kentucky and the evidence, I must disagree with the majority decision because in order to submit a malpractice claim to the jury, Kentucky courts require proof of causation, which the plaintiff did not present in this case.
 
 
 31
 "An act or an omission is not regarded as a cause of an event if the particular event would have occurred without it." Prosser & Keeton on Torts Sec. 41 (5th ed. 1984). In medical malpractice actions, Kentucky courts require evidence that the physician's conduct worsened or altered the patient's condition. Kentucky courts have dismissed cases by summary judgment because the plaintiff failed to meet her burden of production to show that the physician's conduct had some substantial effect on the patient's condition. See Walden v. Jones, 439 S.W.2d 571, 576 (Ky.App.1968) (stating, "there is no evidence of record to suggest that favorable results would have been probable even had a tumor been found and immediately removed.... [I]t may not be said that ... there existed a reasonably probable medical chance of reversing or ameliorating the paralytic condition"); Neal v. Welker, 426 S.W.2d 476, 479 (stating, "The medical experts testified categorically, and without contradiction, that Neal had no chance and that the fatal progress of his condition was irreversible and irretrievable").
 
 
 32
 The district court found specifically that "[t]here is no testimony that Wiley actually had a chance of survival after her initial injuries." The district court stated that Wiley failed to introduce "some proof that Wiley would have survived or that her course would have been different absent the post-automobile accident events at the hospital." The district court correctly understood and was sensitive to the concerns of Kentucky courts on these matters.
 
 
 33
 The evidence the majority opinion highlights, placed in the context of all of the other testimony, does not create a question on which reasonable jurors could differ. The physicians' testimony regarding what effect the negligent insertion of a nasogastric tube could have on an uninjured person is not relevant to the causation issue in Wiley's case. The testimony of the pathologist and the neurosurgeon clearly states that the course of Wiley's condition was set before she entered the hospital. The testimony of Dr. Travis stating that he could not "rule out recovery as the result of the automobile accident itself," cited by the majority, is taken out of context. Dr. Travis stated that if Wiley had any chance of survival or improvement, the negligent insertion of the nasogastric tube "would have seriously impaired any chance to improve." He further stated that the treating neurosurgeon was in a better position to assess the extent of Wiley's initial injuries.
 
 
 34
 The district court applied Kentucky law correctly and properly granted summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (stating, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"). The physician's conduct cannot be said to be the cause of Wiley's coma and death if her condition would have been the same absent the physician's conduct. Because no reasonable jury could conclude that the negligence of the doctors was the proximate cause of Wiley's coma and death, I would affirm the decision of the district court.